NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ESAU CHAMPAIGNE, JR.,<br><br>Plaintiff,<br><br>v.<br><br>RONALD L. DAVIS, *et al.*,<br><br>Defendants. | No. 23cv3319 (EP) (JRA)<br><br>**OPINION** |

Plaintiff Esau Champaigne, Jr. ("Champaigne") brings this federal civil rights action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) in connection with a search of Plaintiff's home on January 20, 2022 conducted by Defendant Deputy U.S. Marshal Nicholas Binetti ("Binetti") and other unidentified Defendants from the U.S. Marshals Regional Fugitive Task Force. D.E. 21 ("Second Amended Complaint" or "SAC").[1] Defendant Binetti moves to dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). D.E. 30 ("Motion" or "MTD"). The Court decides the Motion without oral argument. *See* Fed. R. Civ. P. 78; L. Civ. R. 78.1(b). Because the Supreme Court has dramatically narrowed the availability of *Bivens* relief, the Court will **GRANT** the Motion and **DISMISS** the Second Amended Complaint.

---

[1] Per Champaigne's previous motion to further amend the complaint to voluntarily dismiss claims asserted against other Defendants, and this Court's Order, Defendant Binetti is the final remaining named Defendant in this case. D.E.s 19, 20.

I.   **BACKGROUND**[2]

Champaigne is a Hackensack, New Jersey resident.  SAC ¶ 4.  On January 20, 2022, Plaintiff heard banging on his apartment door and asked who it was.  *Id.* ¶¶ 13-15.  Defendants announced they were the police. *Id.* ¶ 16.  Defendants had covered the peep hole, preventing Champaigne from looking through it when he tried.  *Id.* ¶¶ 17-18.  After refusing to answer Champaigne when he asked who Defendants were looking for, Defendants instructed Champaigne to open the door.  *Id.* ¶¶ 19-21.  Only wearing a towel, Champaigne told Defendants he needed to change and would open the door after.  *Id.* ¶¶ 14, 22.

Champaigne walked to his bedroom to get dressed and FaceTimed his sister, Lovely Rodgers ("Rodgers") to relay what was happening.  *Id.* ¶¶ 23-24.  Meanwhile, Defendants drilled the door hinges off of Champaigne's door.  *Id.* ¶ 25.  Champaigne turned his phone to the door so Rodgers could see as well.  *Id.* ¶ 26.  Champaigne then laid down in front of his door to show that he was unarmed and posed no threat to Defendants.  *Id.* ¶ 27.

Six to seven U.S. Marshals then entered Champaigne's apartment without producing a search warrant.  *Id.* ¶¶ 28-29.  Defendants threw Champaigne's phone and instructed him to crawl out of his apartment.  *Id.* ¶¶ 30-31.  Defendant Binetti put his knee on Champaigne's back and handcuffed him.  *Id.* ¶ 32.  Defendants again failed to answer Champaigne directly when he asked who they were looking for.  *Id.* ¶¶ 33-34.  Instead, Defendants asked a series of questions which Champaigne answered, including what his name was, whose apartment it was, and why he "ran away from the door."  *Id.* ¶¶ 34-38.  Champaigne provided all requested information and reiterated that he left the door because he needed to put clothes on.  *Id.* ¶ 39.

---

[2] The facts in this section are taken from the Second Amended Complaint's well-pled factual allegations, which the Court presumes to be true for purposes of resolving the Motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendants then began to search Champaigne's apartment. *Id.* ¶¶ 41-43. After further questioning, Defendants advised Champaigne they were looking for a sex offender named Russel Brimmer ("Brimmer"), who Champaigne repeatedly denied knowing or ever seeing. *Id.* ¶¶ 54-58. Defendants stated that they would pay for the damage to Champaigne's door and Defendant Binetti gave Champaigne his phone number so that he could send a photo of Brimmer. *Id.* ¶¶ 68-69.[3]

During Defendants' questioning, Champaigne's cousin, Unique Powell ("Powell"), arrived at the apartment. *Id.* ¶ 63. As Powell left the apartment, Defendants showed Powell an arrest warrant for Brimmer. *Id.* ¶ 72. The address listed on the warrant was not Champaigne's, or even in Hackensack, but rather, a Newark, New Jersey address. *Id.* ¶¶ 73-74. Defendants did not show Champaigne the arrest warrant or ever produce a search warrant. *Id.* ¶¶ 75-76.

Champaigne alleges that Defendants unlawfully searched his home, unlawfully arrested him, and used excessive force against him. *Id.* ¶¶ 83-97. All claims are brought under *Bivens*. Defendant Binetti moves to dismiss the Second Amended Complaint, arguing that *Bivens* is inapplicable. MTD. Champaigne opposes. D.E. 31 ("Opp'n"). Defendant replies. D.E. 33 ("Reply"). Defendant also submitted a notice of supplemental authority. D.E. 37 ("Supp. Auth.").

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pled factual allegations as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation

---

[3] Following the incident, Champaigne texted Defendant Binetti to request the photo but Binetti did not respond. *Id.* ¶ 70.

3

omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

To survive a Rule 12(b)(6) challenge, a plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Finally, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

### III. ANALYSIS

*Bivens* provides a means, absent explicit statutory authorization, for individuals to seek damages for Fourth Amendment violations committed by federal officers. *Ziglar v. Abbasi*, 582 U.S. 120, 130-31 (2017). Specifically, the *Bivens* court held that "it had authority to create 'a cause of action under the Fourth Amendment' against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations." *Egbert v. Boule*, 596 U.S. 482, 490 (2022) (quoting *Bivens*, 403 U.S. at 397). Twice more has the Supreme Court "fashioned new causes of action under the Constitution—first, for a former congressional staffer's Fifth Amendment sex-discrimination claim, *see Davis v. Passman*, 442 U.S. 228 (1979);

4

and second, for a federal prisoner's inadequate-care claim under the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14 (1980)." *Id.* at 490-91.

Characterizing the recognition of new *Bivens* claims as "a disfavored judicial activity," the *Egbert* Court clarified a two-part inquiry for proposed *Bivens* claims: (1) whether a case presents a new *Bivens* context and (2) if such a context exists, whether special factors indicate that the "Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 490-92 (cleaned up). Defendant characterizes the facts here as a new context due to a differing legal mandate and a new category of defendants.

The existence of a new context hinges on whether the case is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court[.]" *Ziglar*, 582 U.S. at 139. Recognized differences include:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 140.

A new category of defendants is a new context. *Egbert*, 596 U.S. at 492.

**A. Champaigne's Claims Present a New *Bivens* Context**

The Court first addresses Defendant's argument that the legal mandate differs because "*Bivens* involved a search by federal narcotics agents, whereas Defendant Binetti is a Special Deputy U.S. Marshal." MTD at 7-8. Champaigne counters that there is no meaningful difference between a U.S. Marshal and an officer of the "now-defunct federal narcotics agency

from which the defendant officers in *Bivens* hailed." Opp'n at 8. Champaigne laments Defendant's position as seemingly precluding any claim from moving forward "since the agency of the defendant law enforcement officers in *Bivens* simply does not exist anymore." *Id.* at 11. While finding a category of defendant that is not meaningfully different from that in *Bivens* is not impossible, it is nearly so.

The Court finds that the U.S. Marshals Service differs from federal narcotics agents enough to create a new *Bivens* context. Courts have routinely made such a distinction. *See Robinson v. Heinze*, 655 F. Supp. 3d 1276, 1282 (N.D. Ga. 2023) (distinguishing in part because defendants were U.S. Marshals in fugitive task force); *Senatus v. Lopez*, No. 20-60818, 2022 WL 16964153, at *5 (S.D. Fla. Oct. 12, 2022), *report and recommendation adopted*, 2022 WL 16961323 (S.D. Fla. Nov. 16, 2022) (same); *Lewis v. Westfield*, 640 F. Supp. 3d 249, 253 (E.D.N.Y. 2022) ("The defendants are Deputy Marshals, rather than federal narcotics agents."); *Edwards v. Gizzi*, No. 20-7371, 2022 WL 309393, at *7 (S.D.N.Y. Feb. 2, 2022) (distinguishing officers including U.S. Marshals from federal narcotics agents).

Champaigne cites to caselaw rejecting what he calls the "different windbreaker" argument. Opp'n at 8. In *Aaron v. City of Lowell*, the District of Massachusetts did not find defendants were a meaningfully different category because they were DEA Task Force members (i.e., as in *Bivens*, narcotics agents). 666 F. Supp. 3d 102, 129 (D. Mass. 2023). The same was true in *Bueno Diaz v. Mercurio*, 442 F. Supp. 3d 701, 708 (S.D.N.Y. 2020) ("[B]oth *Bivens* and this case concern the same type of federal officers: narcotics officers."). The court in *Graber v. Dales* did not find a Secret Service agent meaningfully different from the *Bivens* narcotics agents because the federal agency in *Bivens* no longer exists. No. 18-3168, 2019 WL 4805241, at *4 (E.D. Pa. Sept. 30, 2019). But *Graber*, which pre-dates *Egbert*, neither binds nor persuades this

Court. Champaigne has presented no case in which a court extended a remedy against a U.S. Marshal and *Egbert* seems to foreclose such an invitation, cautioning against determinations that courts are "better positioned than Congress to create a damages action." *Egbert*, 596 U.S. at 492. Accordingly, the Court finds a new context exists and turns to whether special factors counsel hesitation to extend *Bivens* to it.

Defendant also argues that the legal mandate differs because in *Bivens*, the narcotics agents "entered plaintiff's home without any warrant or legal mandate" whereas here, "the [SAC] alleges that Defendant Binetti was executing a valid arrest warrant, albeit at the wrong address." MTD at 9 (citing SAC ¶¶ 72-73). Champaigne opposes and argues that Defendant's conduct was not pursuant to any warrant at all. Opp'n at 11. Defendant is correct that numerous courts have recognized a meaningful difference from *Bivens* where agents act pursuant to a valid warrant. But in all the cases he cites, the warrant was issued for the plaintiff or the home in question. MTD at 9-10 (collecting cases).

Defendant provided a recent Third Circuit case as supplemental authority for the proposition that the presence of an arrest warrant at all—irrespective of how it is executed—constitutes a new context. Supp. Auth. (citing *Henry v. Essex Cnty., et al.*, No. 23-1987, 2024 WL 3978923 (3d Cir. 2024)). However, the *Henry* warrant was for a different person with the same name as the arrestee and the analysis turned on whether the police made a "reasonabl[e] mistake" in executing the warrant. *Henry*, 2024 WL 3978923, at *3 (quoting *Hill v. California*, 401 U.S. 797, 802 (1971)). The Third Circuit does not opine on whether an unreasonable mistake in executing a valid warrant would be meaningfully different than no warrant at all. Here, the mistake was patently unreasonable, as a warrant for a man named Russel Brimmer at an address a county away, SAC ¶¶ 72-74, could not possibly lead the Marshals to "reasonably

7

mistake a second party for the first party." *Hill*, 401 U.S. at 802. These facts are distinguishable from *Henry*, in which the Pennsylvania Board of Probation and Parole "provided the Marshals" with the arrestee's address and photograph. *Henry*, 2024 WL 3978923, at *3. As such, although the facts of this case present a new *Bivens* context for the reasons explained *supra*, the Court notes that the search here was functionally warrantless, akin to the search in *Bivens*.

## B.  Special Factors Counsel Hesitation

"The Supreme Court in [*Ziglar*] intimated, and in [*Egbert*] confirmed, that a court may not create a *Bivens* remedy 'if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure.'" *Smith v. Garcia*, 647 F. Supp. 3d 90, 95 (E.D.N.Y. 2022) (quoting *Egbert*, 596 U.S. at 493). "An alternative remedial structure, 'like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Challenger v. Bassolino*, No. 18-15240, 2023 WL 4287204, at *8 (D.N.J. June 30, 2023) (quoting *Egbert*, 596 U.S. at 493). "It does not matter if those existing remedial structures 'do not provide complete relief' or are 'not as effective as an individual damages remedy.'" *Cohen v. United States*, 640 F. Supp. 3d 324, 338 (S.D.N.Y. 2022) (quoting *Egbert*, 596 U.S. at 493, 498).

Here, Defendant argues there are multiple alternative remedial schemes available. MTD at 11-12. First, "Plaintiff had the option of filing a grievance with the Director of the USMS, who 'shall' investigate 'alleged improper conduct on the part of U.S. Marshals Service personnel.'" *Id.* at 10 (quoting 28 C.F.R. § 0.111(n)). Defendant also points to the option of reporting the incident to the Department of Justice's Inspector General, authorized under 5 U.S.C. § 413(b)(4) to investigate allegations of misconduct or wrongdoing. *Id.* These sorts of remedial schemes foreclose a *Bivens* action. *Challenger*, 2023 WL 4287204, at *9; *see also*

8

*Logsdon v. USMS*, 91 F.4th 1352, 1359 (10th Cir. 2024) ("Here, as several other courts have already held since *Egbert*, the internal USMS grievance procedure and the Department of Justice's Office of the Inspector General (OIG) investigation procedure are adequate alternative remedies."). Defendant also argues that the Federal Torts Claim Act ("FTCA") is an alternative remedial scheme foreclosing a *Bivens* action. MTD at 12. The Court agrees this is "another alternative remedial structure that would counsel against implying a damages remedy here." *Challenger*, 2023 WL 4287204, at *10. As at least one special factor[4] counsels against extending *Bivens* here, the Court will grant Defendant's Motion.[5]

## IV.   CONCLUSION

For the reasons above, the Court will **GRANT** Defendant's Motion, D.E. 30, and **DISMISS** the Second Amended Complaint. An appropriate Order accompanies this Opinion.

Dated: December 9, 2024

_____
Evelyn Padin, U.S.D.J.

---

[4] Since "[t]here is at least one reason to believe that Congress is better equipped than the courts to determine the contours of a damages remedy," the Court need not address Defendant's remaining arguments. *Challenger*, 2023 WL 4287204, at *8. Champaigne also does not substantively engage with Defendant's arguments in opposition.

[5] Defendant also raises a qualified immunity argument, MTD at 15-16, but the Court need not reach it in light of its *Bivens* finding.

9